mained a considerable balance unpaid of the debt. He brings this suit to collect that balance. It is contended by his counsel that he is entitled to recover all of the debt that was not covered by the sale of the property which was his security. It is contended by counsel for Ticknor & Co. that they were fully discharged by the composition proceedings of any claim on account of that debt.

We are of opinion that the law of the case lies between them. I am of opinion myself that the compromise provisions of the bankrupt act design that every creditor shall receive the same proportion of his debt; and I am of opinion, as regards the parties who shall receive, that the secured creditor is a creditor for that purpose for all that is not satisfied by his security. And I am of opinion that whenever this fact is ascertained, even after the compromise, that remainder constitutes a debt against the bankrupt, of which he shall pay the same proportion to that creditor that he has paid to the unsecured creditors.

It is here urged very strongly—and the argument is very well put, and it is about the only argument I think worth noticing specially—that Paret, having notice of these proceedings, having notice that the bankrupts had scheduled him as a fully secured creditor, and having taken no exception to that statement, is bound by it. I think Mr. Meyers (defendants' counsel) considers it an adjudication of the bankruptcy court, or at least considers it conclusive against the plaintiff that his claim was fully secured. I do not take that view of it. I think it probable, but I am not sure about it, although it is my impression now, that if any adjudication had been made, and either of the parties had brought to the court the question, so that it could be decided whether the security was a sufficient security, and if it was not a sufficient security, for what sum beyond it Mr. Paret had a claim, and that matter had been adjudicated, that that would have been an end of the transaction, and that in the compromise order the bankrupt would not have been compelled to provide for the 25 per cent, or for the difference. And if it was decided by the court to be a fully secured debt, and the bankrupt had let it go in that way, then the bankrupt would have parted with all his claim to the property, and the creditor would have accepted it in full payment of the debt. It would have been a judicial settlement of the transaction, in which the bankrupt would be divested of any right to the property, and the creditor would be divested of any further claim personally against the bankrupt. But this was not done, and it follows, I think, that neither of these results was attained. Ticknor & Co. retained an interest in that property, and before Paret had finally foreclosed his rights in it they could have redeemed it; and if it had been worth ten times the debt, they would have had the right to redeem it, and have the advantage of the full value above the debt, from the fact that it remains unadjusted. And so Paret gets advantage of the fact that it remains unadjusted. He can foreclose whenever the proper time comes, or whenever by law he will be obliged to do it, and if the property sells for less than his debt he can make Ticknor pay, not the whole of the difference, but 25 per cent of it, if the composition is carried out; and if it sells for more than the debt, Ticknor & Co. will be entitled to the surplus."

What would have been the result if the parties had formally agreed in writing that the security was ample, we are not called on to say, but we are of opinion that the mere silent acquiescence of the creditor, his mere failure to dissent, does not affect his claim.

The demurrer, however, goes to the entire answer [and as the answer does set up a good defense for all but 25 per cent. of the deficit],[2] it must, therefore, be overruled.

Judgment accordingly.

NOTE. Subsequently, before Dillon, Circuit Judge, and Treat, District Judge, the plaintiff took judgment for the full amount of the note, with a provision that it might be satisfied by the payment of the 25 per cent, if the composition was carried out; if not, then the judgment to stand for the full amount.

---

## Case No. 10,712.

### In re PARHAM et al.

[17 N. B. R. 300.][1]

District Court, E. D. North Carolina. March 15, 1878.

BANKRUPTCY — SURRENDER BY PREFERRED CREDITOR—RIGHT TO VOTE FOR ASSIGNEE.

P. & D., being insolvent, made an assignment of all their copartnership property to A., their largest creditor, upon which they were adjudicated bankrupt. At the first meeting of creditors, A., having sold out the partnership goods and collected its notes and accounts in part, appeared before the register and offered to surrender to him a roll of unaccounted bills as the net proceeds of the fraudulent preference, to prove his debt and vote for assignee. *Held*, that the surrender of a fraudulent preference can only be made to the assignee, and pending his appointment and qualification the proof of debt must be postponed, and the offer of the preferred creditor to vote for assignee be denied.

P. A. Dunn & Co., of Baltimore, creditors of the bankrupts, whose preference was the basis of the petition and adjudication of bankruptcy, appeared at the first meeting of creditors, and by their counsel offered to surrender to the register the effects still remaining in their hands in specie, together with the net proceeds of sale under the fraudulent assignment, and asked leave to prove their debt and vote for assignee, which offer and

[2] [From 5 Cent. Law J. 328.]

[1] [Reprinted by permission.]

request were refused by the register; and thereupon the following questions were stated and agreed upon by the counsel for the respective parties, to be certified by the register to the district judge for his opinion thereon: First. Has a creditor whose preference has been adjudged fraudulent a right to surrender to the register the proceeds of his preference, a part in specie, and a part the proceeds of sales and collections effected by him? Second. Has such creditor at such meeting the right to prove his debt in full, or only for a moiety thereof? Third. If he has a right to prove at the first meeting, has he a right to vote for assignee? It is admitted: First. That the preferred creditors, P. A. Dunn & Co., were not parties in the proceedings instituted against Parham & Dunn, in which they were adjudicated bankrupts; that no recovery was had, and no suit was or had been instituted against P. A. Dunn & Co. about or concerning the property of the bankrupts; but that the said P. A. Dunn & Co. came forward and offered to surrender to the register every species of property, or the proceeds arising from the sale and collection thereof, which they have received at the hands of Parham & Dunn. Second. That the said P. A. Dunn & Co. did actively resist the adjudication of bankruptcy of the said Parham & Dunn, employing counsel, paying expenses of witnesses, etc., and instigating and carrying on the resistance made to the prayer of the petitioning creditors, ostensibly by J. H. Dunn, one of the bankrupt firm, and in the name of said firm, for the purpose of preventing the assignment made to them by said bankrupts from being impeached, and desired in making said surrender to retain in their hands out of the proceeds of sales made by them an amount sufficient to reimburse them for their outlay in making such resistance.

By A. W. SHAFFER, Register:

This is a proceeding in involuntary bankruptcy, and the act of bankruptcy charged was the fraudulent assignment by the bankrupts of all their estate, both real and personal, including a stock of merchandise, notes, and the book accounts of the bankrupt firm to P. A. Dunn & Co., to secure the debt which they now seek to prove and vote upon for assignee, to the amount of eight thousand four hundred and sixty-nine dollars and ninety-three cents. They have sold the merchandise in part at auction and in part in ordinary course, and collected some portion of the notes and open book accounts. It is admitted that, after the fraudulent transfer, Junius H. Dunn, the member of the bankrupt firm who made the fraudulent transfer during his partner's illness and without his assent, became the agent of these creditors for the sale of the goods and the collection of the debts due the bankrupt firm so fraudulently transferred, and that while so acting as the agent of these creditors he took an in-

ventory of the stock of merchandise so transferred, in the interest of these creditors, amounting to two thousand nine hundred dollars or thereabouts, at original Baltimore cost. These creditors do not offer to surrender under this inventory, taken by themselves alone, but only the net proceeds of sales after deducting the cost, expenses and disbursements of such sales and collections, to wit, the sum of one thousand seven hundred dollars or thereabouts.

The unsecured creditors claim: First. That the surrender, if made, must be made upon the basis of the inventory, subject to a rigid scrutiny into the whole proceeding subsequent to the transfer. Second. That actual fraud was committed by P. A. Dunn & Co., and per consequence they may prove for a moiety only. Third. That the surrender of a preference, when it cannot be made in specie, can only be made to an assignee, who alone has power to determine the amount due the estate by the vendee of a fraudulent transfer.

With all deference to the learned counsel who stated and agreed upon the questions hereby certified, I submit that, stripped of all redundant matter, the controlling question is: Can a creditor who has received a fraudulent preference surrender the same to the register before the election of an assignee? If he can, then the right to prove his debt in full and vote for assignee must undoubtedly follow in natural sequence. That they might have surrendered to the marshal who executed the warrant of seizure against the estate of the bankrupt is doubtless true, for he was the legal custodian of the estate pending the appointment of an assignee; but that such a surrender would have been a full settlement, binding upon the assignee, and restoring these creditors to all the rights and privileges of bona fide unsecured creditors, as claimed by their counsel in the argument of this cause, is by no means conceded. The wisdom of that provision of law which authorizes the postponement of proof of a doubtful claim until the appointment of the assignee was clearly demonstrated in this case. The meeting at which the offer to surrender and prove was made was the first meeting of creditors. called for the proof of debt and the choice of an assignee, a proceeding which no collateral matter should be permitted to interrupt or delay. This claim was contested at every salient point, and to determine its truth and justice would have consumed the time of the court in a long and exhaustive investigation into a stated account, running through several years, of mutual debt and credit. The tender made in surrender was a roll of uncounted money, unaccompanied by any schedule or statement of the disposition of the property, or the sources from whence the money was derived, whereby the register might judge whether it was or was not "a full surrender of all property, money, benefit, or advantage received by them under such

preference." No adjudication had been made upon the question of actual fraud on the part of P. A. Dunn & Co. in receiving the fraudulent preference, whereby the register might determine whether the creditors were entitled to prove their ·debt in full, or only a moiety thereof; and even if, in an ordinary case, a register might temporarily receive the surrender of a preferred creditor, from one who tenders it in good faith, unimpaired and in specie, without opposition, such a receipt could not conclude or bind the assignee beyond a credit of the amount ˙so received by the register and transferred to him, nor could it affect the standing rights or privileges of the party so surrendering, in the court.

The supreme court of the United States have taken the precaution to amend the fifth rule of general orders in bankruptcy, inserting a proviso therein as follows: "Provided, however, that, by the surrender of a bankrupt mentioned and referred to in this order and in the act [of 1867 (14 Stat. 517)] in that behalf, is intended and understood a personal submission of the bankrupt himself for full examination and disclosure in reference to his property and affairs, and not a surrender or delivery of the possession of his property." And the words "and in the act in that behalf" in the above paragraph quoted refer to section 5084, Rev. St., and is as follows: "Any person who . . . has accepted any preference, having reasonable cause to believe that the same was made or given by the debtor, contrary to any provision of the act . . . shall not prove the debt or claim on account of which the preference is made or given, nor shall he receive any dividend therefrom until he shall first surrender to the assignee all property, money, benefit or advantage received by him under such preference.

I have devoted to this question much more careful consideration than the case seems to me to require, because of the eminent learning and acknowledged authority of the Baltimore counsel for these creditors, in whose views I have not been able to concur. I am of the opinion that the surrender of a fraudulent preference can only be made to the assignee, and that pending his appointment and qualification the proof of the debt on account of which the preference was given must be postponed, and the offer of the creditor receiving the preference, to vote for assignee thereon, denied. And I have ordered accordingly.

Geo. Badger Harris, for P. A. Dunn & Co. A. W. Tourgee and W. H. Young, for the estate.

BROOKS, District Judge. The questions certified by Mr. Register Shaffer, herewith filed, are examined and considered by the court, and the rulings of the register, are in all things approved and affirmed.

## Case No. 10,713.

### PARHAM v. AMERICAN BUTTONHOLE, OVERSEAMING & SEWING–MACH. CO. et al.

[4 Fish. Pat. Cas. 468; 3 Leg. Gaz. 121; 1 Leg. Gaz. Rep. 145; Merw. Pat. Inv. 671.] [1]

Circuit Court, E. D. Pennsylvania. April, 1871.

PATENTS — POWER TO GRANT REISSUE — SHUTTLE DRIVER OF SEWING MACHINE—ABANDONED EXPERIMENTS—COMBINATION.

1. The power of accepting the surrender of the original patent, and of granting a reissue of it, is confided exclusively to the commissioner, and is to be exercised judicially by him.

2. The presumption is, that he has exercised it lawfully, and that the reasons for which alone its exercise could be invoked have been sufficiently shown to exist.

3. As a corollary from this, his decision is final, and is to be treated as foreclosing all inquiry into the existence or sufficiency of the facts which are prescribed as necessary to authorize him to grant a reissue.

4. Fraud, even, will not warrant a re-examination of his decision, at the instance of an alleged infringer.

5. The only ground on which the allowance of a reissued patent is open to objection is, that the commissioner has exceeded his authority, in granting a reissue for an invention different from the one embraced in the original patent.

6. If the original and reissued patent are for the same invention, the latter, with the new specification and description, is to be substituted for the old as the evidence of the patentee's title, and of the nature and object of his invention.

7. Differences in the description and claims of the old and the new specifications are not the tests of substantial diversity, but the description may be ·varied, and the claim restricted or enlarged, provided the identity of the subject-matter of the original patent is preserved.
[Cited in Herring v. Nelson, Case No. 6,424; Kerosene Lamp Heater Co. v. Littell, Id. 7,-724.]

8. Nor is the alleged discrepancy to be determined by a reference exclusively to the two specifications; the drawings and model filed with the original specification are also proper subjects of consideration, and are often of decisive weight.
[Cited in Reissner v. Anness, Case No. 11,-688.]

9. The omission in a reissued patent of an element of a combination claimed in the original, constitutes no tenable objection to the reissue.
[Cited in McWilliams Manuf'g Co. v. Blundell, 11 Fed. 420; Buffington's Iron Bldg. Co. v. Eustis, 13 C. C. A. 143, 65 Fed. 806.]

10. A claim in the following words, "so forming and constructing the shuttle-driver of a sewing machine, that while it performs the required duty of driving the shuttle, it serves to maintain the latter in the desired proximity to the plate C," is not a claim for functions in the abstract, but the form and construction of the driver are the gravamen of the claim.
[Cited in Henderson v. Cleveland Co-operative Stove Co., Case No. 6,351.]

11. Rendered with reference to the whole specification and the model, it imports a claim

---

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission. Merw. Pat. Inv. 671, contains only a partial report.]